# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 21, 2016

## STATE OF TENNESSEE v. MANDRICUSS LASHON ROBERTSON

### Appeal from the Criminal Court for Davidson County
No. 2014-D-2557     Cheryl A. Blackburn, Judge

_____

### No. M2015-01935-CCA-R3-CD – Filed August 9, 2016
_____

Defendant, Mandricuss Lashon Robertson, pled guilty to twelve counts of aggravated burglary and an agreed-upon effective sentence of twenty years as a Range II, multiple offender in exchange for the dismissal of the remaining twenty-three counts of the presentment. The trial court denied an alternative sentence after a lengthy sentencing hearing. Defendant now appeals. After a review, we conclude that the trial court did not abuse its discretion in imposing a sentence involving incarceration. Accordingly, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennant (on appeal) and Patrick Hakes (at guilty plea), Assistant Public Defenders, for the appellant, Mandricuss Lashon Robertson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Glenn R. Funk, District Attorney General; and Nathan McGregor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In October of 2014, the Davidson County Grand Jury issued a thirty-five count presentment charging Defendant with one count of burglary of a motor vehicle, twenty-one counts of theft of property, one count of forgery, one count of identity theft, and twelve counts of aggravated burglary. Defendant ultimately entered a guilty plea to

twelve counts of aggravated burglary. In exchange, Defendant received a sentence of ten years as a Range II, multiple offender on each count, with one running consecutively to the other eleven, for a total effective sentence of twenty years. The remaining charges were dismissed, but the manner of service of the sentence was to be determined by the trial court after a sentencing hearing.

At the guilty plea hearing, counsel for the State summarized the evidence underlying the offenses to which Defendant would plead guilty. Many of the crimes committed by the Defendant began in the same manner, with Defendant's throwing a rock through a door or window to gain access to a residence or vehicle in order to steal items inside. Once the items were stolen, Defendant stored some of them at the home of his wife. Other items were taken to pawn shops in Kentucky and exchanged for cash to support Defendant's addiction to heroin.

In Count 5, Defendant threw rocks through the bedroom door of the home belonging to Dana and Patricia Roland. Defendant stole $11,000 worth of property. The police later located one of the items at the home of his wife and another item at a pawn shop in Kentucky.

In Count 8, Defendant again shattered a back door to a residence, this time to the home of Gloriana Pugh. Defendant stole approximately $5000 worth of valuables. Nine of these items were later recovered at the home of Defendant's wife.

In Count 11, Defendant burglarized the home of Charles Escue. Defendant broke the front window and stole approximately $108,000 worth of property. Defendant was identified by several witnesses because of the red pickup truck he was driving. Surveillance cameras also recorded some of Defendant's activity. As a result of this evidence, police were able to secure a search warrant and attach a GPS device to Defendant's truck.

In Count 13, Defendant broke the glass door of the home belonging to Powanda Anthony and Donald Calhoun. Defendant stole approximately $8000 worth of items from the home. Information obtained from the GPS device confirmed that Defendant's truck was in the area at the time of the burglary.

In Count 16, Defendant "busted out" a door at the home of Dorothy Fuller. Defendant stole about $12,500 worth of property from her residence. Again, the GPS device confirmed Defendant was in the area on the day of the theft. Additionally, police later located three of the stolen items at the home of Defendant's wife.

In Count 18, Defendant stole $13,000 worth of items from the home of Brandon Crafton and Brenda Griggs after shattering their sliding glass door with a rock. Again,

the GPS device placed Defendant in the location of the burglary at the time it occurred. Defendant took eight of the items stolen at this home to a pawn shop in Kentucky and hid the other items at the home of his wife.

In Count 20, Defendant again threw a rock through a window to gain access to a residence. This time, Defendant broke in to the home of Gary Gaddes before stealing $1800 worth of property. The GPS device confirmed Defendant was in the location at the time of the crime. Defendant pawned one of the items stolen at the Gaddes residence in Kentucky and moved one of the items to the home of his wife.

In Count 22, Defendant snuck in through an unlocked window into the home of Kimberly and Jay Bradshaw. At this residence, Defendant took $3000 worth of property, pawning two of the items in Kentucky and taking one of the items to the home of his wife.

In Count 29, Defendant broke in to the home of Karen Shelton by gaining entry through a window. Defendant stole $2350 worth of property from the home. One item was pawned in Kentucky, while another item was found at the home of Defendant's wife.

In Count 31, the GPS device placed Defendant at the scene where the rear glass window of a home belonging to Donna Gurchiek was broken. Ms. Gurchiek confirmed $3000 worth of property was stolen from the home. Three of the stolen items were pawned in Kentucky and one of the stolen items was stored at the home of Defendant's wife.

Defendant was arrested and questioned. He admitted that he burglarized the home of Mr. Escue. He also admitted that he pawned several items to a pawn shop in Kentucky in exchange for cash. Defendant acknowledged that he had committed other burglaries but could not specify a number.[1]

The trial court accepted the guilty plea. The trial court scheduled a sentencing hearing at which the manner of service of the sentence would be determined.

At the sentencing hearing, the trial court admitted the presentence report into evidence. The report revealed that, at the time of the sentencing hearing, Defendant had at least eleven prior misdemeanors and five prior felonies including: violation of the habitual traffic offender law; driving with a revoked license; theft of property valued between $1000-$10,000; burglary; robbery; assault; reckless driving; use of stolen plates;

---

[1] The State did not recite the factual basis for Count 25 (aggravated burglary of Vanita Murphy) and Count 27 (aggravated burglary of Savana Thomas). We presume these are just two of the other burglaries Defendant could not specifically recall.

- 3 -

aggravated criminal trespass; evading arrest; failure to carry/exhibit driver's license; felony vandalism; and aggravated robbery. Additionally, Defendant had a pending probation violation warrant in Rutherford County. Defendant had been placed on Community Corrections in the past but violated the conditions by absconding. After reinstatement, his Community Corrections placement was revoked after he again absconded. After the second violation, his sentence was placed into effect. Defendant had also failed at probation at least twice. Defendant admitted to a long history of alcohol and drug abuse, starting with alcohol and marijuana at the age of thirteen and progressing to cocaine, pain pills, and, eventually, heroin. Defendant had participated in several inpatient and outpatient substance abuse programs.

Three victims testified at the sentencing hearing. Mr. Escue testified about the burglary of his home during which Defendant stole approximately $100,000 worth of jewelry. Mr. Escue described some of the pieces as "museum quality" pieces including a "boulder opal," a gift from the government of Australia, two alexandrites, and other items. While a few of the items were recovered by police, insurance covered only $10,000 of the loss of the jewelry. Mr. Escue testified that he was 67 years old and had cancer; however, as a result of the burglary, Mr. Escue had to take an additional job. Mr. Escue requested that that the trial court order a sentence of confinement.

A second victim, Brenda Dyal, testified that she shared a home with her daughter and her daughter's fiancé, Brenda Griggs and Brandon Crafton. In 2013, her daughter came home one day and discovered the front door ajar. She discovered that the sliding glass door was "busted out" and approximately $15,000 worth of items were missing, including televisions, jewelry, cash, a gun, a PlayStation, and other items. The house was "ransacked." Police recovered a few items from a pawn shop but the remainder of the stolen items were never recovered. Ms. Dyal testified that her insurance covered approximately $3000 of the loss after she paid a deductible. After the break-in, she was "scared to go in [her own] house at nighttime" and later purchased a handgun for protection. Her daughter was afraid to testify at trial.

Lastly, Karen Shelton testified that Defendant threw a brick through her sunroom window and stole about $6000 worth of property from her home, including two rings, a diamond, and other pieces of jewelry. The items were of high sentimental value to Ms. Shelton. The police recovered two pieces—a ring that "had the diamonds taken out of it" and a jewelry box. She claimed that the ring had no value with the stones removed.

Defendant presented the testimony of his wife, Christine Robertson, as well as Brandi Jimerson, a case officer for the Community Corrections dual-diagnosis program. Ms. Robertson testified that she has five children, including a son with special needs. Defendant helped significantly with the care of this twenty-two-year-old with cerebral palsy and other medical conditions. In Defendant's absence, Ms. Robertson had to place

this son in an assisted living facility. Ms. Robertson admitted that Defendant suffered from bipolar disorder and drug addiction but that he received treatment at the Elam Center. Ms. Robertson acknowledged that Defendant did not complete the rehabilitation program but was confident that he was ready to change.

Ms. Jimerson testified that Defendant had been accepted into the New Life Lodge treatment facility for an inpatient program. She could not, however, guarantee that the program would be successful in treating Defendant's heroin addiction.

Defendant took the stand at the sentencing hearing. Defendant described a difficult childhood. Defendant claimed that he was responsible for the care of his son and Ms. Robertson's disabled son. Defendant admitted that he stole because he needed to support his addiction to heroin. At the time of the thefts and break-ins, Defendant was using about one gram of heroin a day at a cost of $150 to $200. Defendant testified that in 2005, he started drinking heavily, smoking marijuana, and abusing prescription pills. He claimed this behavior was precipitated by his brother's death. In 2010, Defendant burglarized his place of employment to support his drug habit. Defendant was placed at Elam Center for intensive outpatient treatment. Defendant admitted that this program did not work because he was not ready to take the steps toward recovery. Defendant described his offenses, explaining to the trial court that he never carried a weapon and chose houses that appeared to be vacant prior to committing crimes.

The trial court evaluated the evidence and determined that an alternative sentence was inappropriate, citing the "exaggerated" degree of the robberies, Defendant's heroin addiction, and his history of failing to complete rehabilitation.

*Analysis*

On appeal, Defendant insists that the trial court should have ordered a sentence of "community corrections with treatment targeting his substance abuse and bipolar disorder" because the record demonstrates his "potential for rehabilitation" and an absence of evidence that would indicate denial of an alternative sentence would have a deterrent effect on others. Further, Defendant submits that alternative sentencing through community corrections "would offer [Defendant] the best chance . . . to remain both law-abiding and drug-free." The State counters that the trial court did not abuse its discretion.

Appellate review of sentencing is for abuse of discretion and we must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (extending presumption of reasonableness to determinations regarding the manner of service of a sentence). Thus, under *Bise*, a "sentence should be upheld so long as it is

- 5 -

within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

Initially, we note that Defendant was not considered a favorable candidate for alternative sentencing because he was classified as a Range II, multiple offender. *See* T.C.A. § 40-35-102(6)(A). He was, however, eligible for probation because his sentence on each count is ten years or less and the offenses for which he pled guilty are not specifically excluded by statute. T.C.A. § 40-35-303(a).

Based upon the pre-sentence report and the evidence at the sentencing hearing, the trial court found that Defendant had multiple prior offenses, including at least four prior felony convictions and eleven misdemeanors. Two of the prior felonies—robbery and attempted robbery—were violent offenses. Defendant also admitted to a long history of drug abuse and stealing from multiple people to support his heroin addiction.

The trial court considered enhancement factor (1) in fashioning Defendant's sentence, finding that Defendant had a history of criminal convictions or behavior in addition to those necessary to establish the appropriate range with four felonies and eleven misdemeanors. *See* T.C.A. § 40-35-114(1). The trial court also considered enhancement factor (8), that Defendant "failed to comply with conditions of a sentence involving release into the community;" (13), that Defendant was on release at the time the current offenses were committed; and (6) damage to property sustained by or taken from the victim was particularly great. *See* T.C.A. § 40-35-114(6), (8), (13). The trial court acknowledged that the crime did not cause or threaten serious bodily injury. *See* T.C.A. § 40-35-113(1).

In determining whether to award an alternative sentence, the trial court noted that Defendant's crimes were "exaggerated" because he committed twelve aggravated burglaries between January 24, 2014, and April 17, 2014. However, the trial court did not find that the crimes were "particularly violent, horrifying, shocking, or reprehensible." The trial court found that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant, noting Defendant's several probation violations. The trial court noted that the number of times Defendant did not show up at Centerstone, "all the other problems that have existed" with Defendant's heroin addiction, and Defendant's failure to take medication as prescribed did not "convince" the trial court that Defendant was an "appropriate" candidate for an alternative sentence. The trial court agreed to make a recommendation to the Department of Correction that Defendant be placed in the special needs facility.

The record shows that the trial court considered the relevant sentencing considerations, and Defendant has not established that the trial court abused its discretion in denying alternative sentencing or "otherwise overcome the presumption of

reasonableness afforded sentences [that] reflect a proper application of the purposes and principles of our statutory scheme." *See Caudle*, 388 S.W.3d at 280. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE